JAMES A. MARISSEN (SBN: 257699)
jmarissen@grsm.com
RACHEL A. WEITZMAN (SBN: 307076)
rweitzman@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
2211 Michelson Drive, Suite 400
Irvine, CA 92612
Telephone: (949) 255-6996
Facsimile: (949) 474-2060

Attorneys for Plaintiff
CMA CGM S.A.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CMA CGM S.A.<br><br>            Plaintiff,<br><br>     vs.<br><br>CTS INTERNATIONAL LOGISTICS CO., LTD.<br><br>            Defendant. | CASE NO.<br><br>**COMPLAINT** |

COMES NOW Plaintiff CMA CGM S.A., and as its Complaint and causes of action against Defendant CTS INTERNATIONAL LOGISTICS CO., LTD. (hereinafter "CTS") alleges as follows:

## JURISDICTION AND VENUE

1.   This is a maritime claim for breach of contract and unpaid freight, detention, demurrage and/or storage costs pursuant to ocean bills of lading and an ocean carrier's tariff and comprises an admiralty and maritime claim pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333(1). In the alternative, it presents a federal question under 28 U.S.C. § 1331 in that it arises under the Shipping Act of 1984, as amended, 46 U.S.C. §§ 40101 et seq.
///

2. Venue is proper in this Court under 28 U.S.C. § 1391(b) in that the transactions that form the basis for the subject contracts for ocean carriage occurred within the judicial district of this Court.

## PARTIES

3. Plaintiff CMA CGM S.A. (hereinafter "CMA CGM") is now and was at all material times a corporation duly organized and existing under the laws of France with a principal place of business at 4 Quai d'Arenc, 13002 Marseille, France. CMA CGM was, and is, an ocean carrier and common carrier of goods for hire on ocean-going vessels between United States ports and foreign ports.

4. Defendant CTS is a business entity organized and existing under the laws of the People's Republic of China ("PRC") with its principal place of business located at 20/F, Tian An Centre, No. 338 Nanjing Road (West), Shanghai 200003. CTS maintains offices in more than one city in PRC, including at 4/F CTS Warehouse Kaiping Road No. 2, Overseas Chinese Town, Nanshan District, Shenzhen, China.

5. Defendant CTS is, and at all material times was, the names consignee on the bills of lading relevant to this Complaint and also issued house bills of lading for the shipments at issue in this Complaint.

6. Defendant CTS is, and at all material times was, a non vessel owning common carrier ("NVOCC") doing business in the United States with licensing from the Federal Maritime Commission.

7. Defendant CTS is, and at all material times was, bonded with the Federal Maritime Commission in relation to its NVOCC activities in the United States.

## FACTUAL BACKGROUND

8. Between November 2015 to January 2016, Multi-Trans Shipping Agency Inc., DJL Mining LLC, and DJL Mining Corp. ("Shippers") booked two hundred sixty (260) containers of cargo (the "Cargo") for shipment with CMA

CGM for carriage from St. Louis, Missouri to Gaolan, China, via the Port of New York. The Shippers represented and warranted that the containers contained "copper ingot" or "zinc oxide." In accordance with the booking, CMA CGM designated "Multi-Trans Shipping Agency Inc. c/o DJL Mining Corp" as the shipper of the Cargo and "Shenzhen CTS International Logistics Co., Ltd.," being the Shenzhen branch of Defendant CTS International Logistics Co., Ltd., as the consignee of the Cargo.

9.  CMA CGM received the Cargo and transported part of the Cargo in one hundred and forty two (142) containers from Missouri to New York and then by various vessels from New York to Gaolan, pursuant to the terms and conditions of CMA CGM Bills of Lading Numbers: NAM2232064A, NAM2240126, NAM2240131, NAM2240023, NAM2240135, NAM2258766, and NAM2258900 (the "CMA CGM Bills of Lading").

10. Defendant CTS, in its capacity as an NVOCC, issued its own "house" bills of lading covering the transportation of the Cargo from St. Louis to Gaolan (the "CTS Bills of Lading"). The CTS Bills of Lading named "Asia Global Renewable Energy Corp" and "DJL Mining Corp." as the shipper of the Cargo. The Cargo was consigned "to order," thus no named consignee was designated in the CTS Bills of Lading. Under the terms of the CTS Bills of Lading, CTS was permitted to subcontract the whole or part of the handling, storage, or carriage of the Cargo with other carriers. Here, CMA CGM was the subcontracted ocean carrier.

11. CMA CGM is informed and believes and thereupon alleges that Defendant CTS was at all material times the shipper, holder, consignee, receiver of the Cargo, and/or person owning or entitled to the possession and control of the Cargo and/or the CMA CGM Bills of Lading, and/or the person or entity acting on behalf of such persons and thus qualify as a "Merchant" under Clause 1 of the CMA CGM Bills of Lading (defined below). Defendant CTS was the entity for

-3-

whose account the transportation services were provided by CMA CGM, was the party that received and benefitted from the transportation services provided by CMA CGM, and was the entity responsible for payment of the charges relating to the Cargo.

12. The Cargo was tendered to CMA CGM for transportation between United States and Gaolan, China on ocean vessels for which freight and other charges were lawfully incurred pursuant to the terms of the CMA CGM Bills of Lading and/or CMA CGM's applicable tariff(s).

13. CMA CGM is informed and believes and thereupon alleges that Defendant CTS received and accepted the CMA CGM Bills of Lading.

14. The CMA CGM Bills of Lading contract terms and conditions provide the following:

>  ...
>
>  **1. "Merchant"** includes the Shipper, Holder, Consignee, Receiver of the Goods, any Person owning or entitled to the possession of the Goods or of this Bill of Lading and anyone acting on behalf of any such Person.
>
>  ...
>
>  **10. MATTERS AFFECTING PERFORMANCE**
>
>  If at any time the Carriage is or likely to be affected by any hindrance, risk, delay, difficulty or disadvantage of any kind (other than the inability of the Goods safely or properly to be carried or carried further which is provided for in Clause 24 infra) and howsoever arising (even though the circumstances giving rise to such hindrance, risk, delay, difficulty or disadvantage existed at the time this contract was entered into or the Goods were received for Carriage), the Carrier (whether or not

-4-

the Carriage is commenced) may, without prior notice to the Merchant and at the sole discretion of the Carrier, either:

(a) carry the Goods to the contracted Port of Discharge or Place of Delivery, whichever is applicable, either by the intended or the alternative route to that indicated in this Bill of Lading or that which is usual for Goods consigned to that Port of Discharge or Place of Delivery. If the Carrier elects to invoke the terms of this Clause 10 (a) hereof, he shall be entitled to charge such additional Freight, including extra war risk charge as the Carrier may determine, or

(b) suspend the Carriage of the Goods and store them ashore or afloat upon the Terms and Conditions of this Bill of Lading and endeavour to forward them as soon as possible, but the Carrier makes no representations as to the maximum period of suspension. If the Carrier elects to invoke the Terms and Conditions of this Clause 10 (b) then, he shall be entitled to charge such additional Freight as the Carrier may determine, or

(c) abandon the Carriage of the Goods and place the Goods at the Merchant's disposal at any place or port which the Carrier may deem safe and convenient, whereupon the responsibility of the Carrier in respect of such Goods shall cease. The Carrier shall nevertheless be entitled to full Freight on the Goods received for Carriage, and the Merchant shall pay any additional costs of the Carriage to, and delivery and storage at, such place or port.

If the Carrier elects to use an alternative route under

Clause 10 (a) or to suspend the Carriage under Clause 10 (b) this shall not prejudice its right subsequently to abandon the Carriage under Clause 10 (c).

...

**11. NOTIFICATION AND DELIVERY**

...

(2) The Merchant shall take delivery of the Goods within the time provided for in the Carrier's Applicable Tariff (see Clause 2). If the Merchant fails to do so the Carrier shall be entitled, without notice, to unpack the Goods if packed in Containers and / or to store the Goods ashore, afloat, in the open or under cover, at the sole risk of the Merchant. Such storage shall constitute due delivery hereunder, and thereupon the liability of the Carrier in respect of the Goods stored as aforesaid shall cease, and the costs of such storage (if paid or payable by the Carrier or any agent or Sub-Contractor of the Carrier) shall forthwith upon demand be paid by the Merchant to the Carrier.

(3) If, whether by act or omission, the Merchant directly or indirectly prevents, delays or hinder the discharge or the delivery of the Goods, any costs, expenses or liability so resulting shall be for its full account.

(4) If the Merchant fails to take delivery of the Goods within ten days of delivery becoming due under Clause 11 (2), or if in the opinion of the Carrier they are likely to deteriorate, decay, become worthless or incur charges whether for storage or otherwise in excess of their value, the Carrier may, without prejudice to any other rights which he may have against the Merchant, without notice and without any responsibility

whatsoever attaching to him, sell, destroy or dispose of the Goods and apply any proceeds of sale in reduction of the sums due to the Carrier from the Merchant in respect of this Bill of Lading.

...

## 24. CARRIAGE AFFECTED BY CONDITION OF CONTAINERS

If it appears at any time that, due to their condition, the Goods cannot safely or properly be carried (or carried further), either at all or without incurring any additional expense or taking any measure(s) in relation to the Container or the Goods the Carrier may without notice to the Merchant (but as its agent only) take any measure(s) and/or incur any additional expense to carry or to continue the Carriage thereof, and/or sell or dispose of the Goods, and/or abandon the Carriage and/or store them ashore or afloat, under cover or in the open, at any place, whichever the Carrier, in its absolute discretion, considers most appropriate, which abandonment, storage, sale or disposal shall be deemed to constitute due delivery under this Bill of Lading. The Merchant shall indemnify the Carrier against any additional expense and liability so incurred.

...

## 26. SHIPPER'S / MERCHANT'S RESPONSIBILITY

(1) All of the Persons coming within the definition of Merchant in Clause 1 shall be jointly and severally liable to the Carrier for the due fulfilment of all obligations undertaken by the Merchant in this Bill of Lading, and remain so liable throughout Carriage notwithstanding their having transferred this Bill of

Lading and/or title to the Goods to any third party. Such liability shall include but not be limited to court costs, expenses and attorney's fees incurred in collecting charges and sums due to the Carrier.

(2) The Shipper warrants to the Carrier that the particulars relating to the Goods as set out overleaf have been checked by the Shipper on receipt of this Bill of Lading and that such particulars, and any other particulars furnished by or on behalf of the Shipper, are adequate and correct. The Shipper also warrants that the Goods are lawful Goods and contain no contraband.

(3) The Merchant shall indemnify the Carrier against all loss, damage, fines and expenses arising or resulting from any breach of any of the warranties in Clause 26 (2) hereof or from any other cause in connection with the Goods for which the Carrier is not responsible.

15. CMA CGM is informed and believes that the Cargo was loaded and discharged by various carrying vessels in Hong Kong pursuant to instructions received by Defendant CTS. However, Defendant CTS refused to provide shipping instructions and/or customs documentations and/or take delivery of one hundred forty-two (142) containers and they remained idle at the marine terminal in Hong Kong (the "Idle Containers") between November 2015 and July 2016 thereby accruing various daily and other charges including, for example, detention and demurrage. Having delivered the Cargo, CMA CGM fully performed all of its obligations under the CMA CGM Bills of Lading.

16. The Idle Containers consist of the following shipments:

(a) A shipment of thirty-two (32) containers, being containers numbered: CAXU6839855, CMAU1260368, ECMU1498575, ECMU2067680,

ECMU2160350, GVCU2031158, TEMU2582159, TGHU3933727, TRHU1800990, TRHU1941941, UNIU2050809, CMAU1374205, TCLU3968299, TEMU2556421, TRLU9294599, IPXU3356253, DVRU1578906, CMAU0255480, DVRU1619965, DVRU1584175, GLDU3261380, CMAU1536076, GESU2689634, IPXU3210660, CAXU6182185, CMAU1178814, CMAU1804950, CMAU1856212, CMAU1932396, ECMU1843352, TCLU2888542 and XINU1436155 that were shipped under CMA CGM Bill of Lading No. NAM2258766 and CTS Bill of Lading Nos. WTSI15110011 and WTSI1511013;

      (b)    A shipment of twenty (20) containers, being containers numbered: CNCU1504390, TGHU3249252, TRLU8829720, CAXU6679192, CLHU3070810, CNCU1501112, ECMU1622650, FCIU3908096, GESU2754365, TRLU8975577, CLHU3397676, CMAU0172703, CNCU1504831, ECMU1425671, TRLU9041970, ECMU1634666, CAXU6777603, CMAU1710980, GESU2874210 and UNIU2049182 that were shipped under CMA CGM Bill of Lading No. NAM2240126 and CTS Bill of Lading No. WTSI15100049;

      (c)    A shipment of twenty (20) containers, being containers numbered: CAIU3410042, CARU3722535, CMAU1238003, TEMU2287718, TRHU2123718, CMAU1923060, SEGU1075997, SEGU1787271, TCKU2099594, CMAU1313128, CMAU1845028, TGHU1300611, TGHU2791680, CAXU6647549, UESU2365454, GESU2710520, GESU2550968, GVCU2099219, CAXU6740902 and ECMU1389527 that were shipped under CMA CGM Bill of Lading No. NAM2240131 and CTS Bill of Lading No. WTSI15100052;

      (d)    A shipment of twenty (20) containers, being containers numbered: CMAU1507988, CMAU1854009, GESU1095561, FCIU3382329, CMAU1097250, TCLU3757830, TCLU7325080, TGHU1322626, TGHU1341800, ECMU1537265, ECMU1862603, TRHU3109400,

TCLU7248281, CMAU1501845, ECMU1689870, GESU2437885, TGHU3445548, ECMU1483600, CRXU1872270 and CRXU1918257 that were shipped under CMA CGM Bill of Lading No. NAM2240023 and CTS Bill of Lading No. WTSI1510900064;

      (e)    A shipment of twenty (20) containers, being containers numbered: UNIU2056860, CMAU1904162, CMAU1209216, ECMU2164232, CMAU1430994, CMAU2040497, TGHU1174370, CMAU0376862, CMAU2072848, GESU1121207, SEGU1781571, TRHU2758853, TRLU3763472, TRLU8966770, TRLU8994598, CMAU1932966, BMOU2052556, TRHU3122254, CMAU1788252 and FCIU4598328 that were shipped under CMA CGM Bill of Lading No. NAM2240135 and CTS Bill of Lading No. WTSI15100068;

      (f)    A shipment of twenty-two (22) containers, being containers numbered: CMAU1410051, IPXU3883681, ECMU2067171, TGHU0052655, ECMU1670283, CRXU3097464, BMOU2169711, CMAU1702665, CMAU0353050, CMAU1700472, CRXU1868686, ECMU1516663, CMAU0026988, ECMU2066339, XINU1528251, CMAU0008156, CMAU0471664, CMAU1734127, CMAU2181197, ECMU2070684, CAIU2361555 and TCLU3839250, that were shipped under CMA CGM Bill of Lading No. NAM2232064A and CTS Bill of Lading No. WTSI15090066; and

      (g)    A shipment of eight (8) containers, being containers numbered: TGHU3096153, ECMU2221862, ECMU1717307, ECMU2064721, that were shipped under CMA CGM Bill of Lading No. NAM2258900 and CTS Bill of Lading No. WTSI15110034.

      17.    Despite receiving notice of arrival of the Cargo in Hong Kong, Defendant CTS failed and refused provide the required shipping instructions and/or customs documentation for the Cargo to be further transported from Hong Kong to Gaolan, China. Further preventing discharge of the Cargo in Gaolan, a

third-party purporting to act as the owner of the Cargo and/or holder of the CMA CGM Bills of Lading filed an emergency action in Hong Kong and obtained an injunction preventing the further movement of the Cargo from Hong Kong.

18. CMA CGM is informed and believes and thereupon alleges that the contents of the Idle Containers which comprise the shipments were loose mud and sand instead of "copper ingot" or "zinc oxide" which, as mislabeled or misdeclared goods, are banned from importation into the PRC. This misdescription is in violation of the shipper's (Merchant's) warranty under Clause 26 of the CMA CGM Bills of Lading.

19. CMA CGM subsequently arranged for the destruction of the Cargo in the Idle Containers in Vietnam. CMA CGM incurred costs totaling US$331,872.00 for the transshipment and destruction of the Cargo in the Idle Containers.

20. As a result of Defendant CTS's failure to provide the required shipping instructions and/or customs documentation and/or take delivery of the Idle Containers, and its misdeclaration on the CMA CGM Bills of Lading, CMA CGM has incurred damages, liabilities, charges, expenses, fees and costs for storage, detention, demurrage, customs and local fees, inspection, transportation, salvage, transshipment, disposal, and destruction.

21. Under the terms of the CMA CGM Bills of Lading, Defendant CTS is obligated to pay these costs, damages, and expenses due and owing by Defendant CTS to CMA CGM totaling approximately US$1,869,191.14.

22. CMA CGM fully performed all of its obligations under the CMA CGM Bills of Lading. Defendant CTS received and benefitted from the transportation services provided by CMA CGM, and is responsible for payment of these various damages, expenses and costs relating to the Idle Containers.

## FIRST CAUSE OF ACTION

(For Breach of Maritime Contract)

23. CMA CGM refers to and incorporates by reference as though fully set forth at length herein its allegations in paragraphs 1 through 22 above.

24. CMA CGM transported and carried the Cargo in the Idle Containers as described herein, at the request and for the benefit of the Defendant CTS, in accordance with the terms and conditions of the CMA CGM Bills of Lading.

25. CMA CGM fully performed all of its obligations under the CMA CGM Bills of Lading and carried the Cargo in the Idle Containers to and discharged the Cargo at Hong Kong, as demanded by Defendant CTS.

26. Under the terms of the CMA CGM Bills of Lading and applicable law, the Defendant CTS was required to provide shipping instructions and/or customs documentation and/or to accept delivery of the Cargo within the time provided for in CMA CGM's Bills of Lading and/or CMA CGM's applicable tariff, and they agreed to be responsible and liable for any and all damages, liabilities, charges, costs, expenses and fees arising from or resulting from their failure to provide shipping instructions and/or customs documentation and/or to accept delivery of the Cargo.

27. Under the terms of the CMA CGM Bills of Lading and applicable law, Defendant CTS also warranted and guaranteed the accuracy of the particulars of the Cargo booked for shipment, including the description and nature of the Cargo, and agreed to indemnify CMA CGM for any loss, damage and expenses arising from inaccuracies in such particulars, the violation of government laws and regulations, and for the shipment of banned cargo to the PRC.

28. Under the terms of the CMA CGM Bills of Lading and applicable law, Defendant CTS further agreed to be liable and responsible for any and all

freight and other charges due under the CMA CGM Bills of Lading and/or applicable tariffs.

29. Defendant CTS breached the terms of the CMA CGM Bills of Lading by, inter alia, failing to provide the required shipping instructions and/or customs documentations and/or accepting or arranging delivery of the Cargo, misdeclaring the particulars of the contents of the Idle Containers, including their nature and being banned from import into the PRC, failing to pay all charges relating to the transportation, storage and handling of the Cargo in the Idle Containers, and by failing to pay CMA CGM the damages, liabilities, detention, demurrage, charges, salvage costs, transshipment and destruction costs, and other expenses and fees arising from Defendant CTS's breach or breaches of the CMA CGM Bills of Lading.

30. As a proximate cause of Defendant CTS's breach or breaches of the CMA CGM Bills of Lading, breach of warranty, and the matters set forth herein, CMA CGM has incurred, and Defendant CTS is liable to CMA CGM for, damages in an amount exceeding US$1,869,191.14, which includes, but is not limited to, amounts due for detention, demurrage, storage, customs fees and penalties, salvage and disposal costs, delivery costs, transshipment and destruction costs, inspection costs and administrative costs.

31. Under the terms of the CMA CGM Bills of Lading, CMA CGM is also entitled to recover from Defendant CTS attorneys' fees and costs incurred as a result of Defendant CTS's breach or breaches and/or incurred in collecting the outstanding amounts from Defendant CTS.

**SECOND CAUSE OF ACTION**

(Money Due Under Marine Tariff)

32. CMA CGM refers to and incorporates by reference as though set forth herein at length its allegations in paragraphs 1 through 31 above.

-13-

33. CMA CGM transported and carried the Cargo in the Idle Containers as described herein, at the request and for the benefit of Defendant CTS, and in accordance with the terms and conditions of the CMA CGM Bills of Lading and subject to the rates and charges in its tariffs on file with the Federal Maritime Commission.

34. Under the said tariffs, CMA CGM is required to collect and is entitled to recover from Defendant CTS, and Defendant CTS is required to pay CMA CGM, all unpaid demurrage, detention, port and terminal storage charges, and any other damages, liabilities, charges, penalties, costs, expenses and fees arising from the carriage of the Idle Containers, Defendant CTS's failure to provide required shipping instructions and/or customs documentation and/or accept delivery of the Idle Containers, Defendant CTS's misdeclaration of the nature of the contents of the Idle Container and/or shipping banned Cargo to the PRC.

35. Despite demand for payment, Defendant CTS has failed to pay CMA CGM amounts due under the tariffs and tariff compensation is due, owing and unpaid to CMA CGM from Defendant CTS in an amount exceeding US$1,869,191.14. Additional charges continue to accrue in accordance with the terms of said tariffs, together with attorneys' fees, costs and expenses incurred in collecting said charges.

## THIRD CAUSE OF ACTION

(Negligence)

36. CMA CGM refers to and incorporates by reference as though set forth herein at length its allegations in paragraphs 1 through 35 above.

37. At all material times herein, Defendant CTS owed CMA CGM a legal duty to exercise due care to provide required shipping instructions and/or customs documentation, to accept delivery of the Idle Containers in Hong Kong and/or Gaolan, to ensure that the particulars of the contents of the Idle Containers

-14-

were not misrepresented or misdeclared to CMA CGM, and to ensure cargo banned from importation into the PRC was not shipped. The legal duty of Defendant CTS to CMA CGM arose because Defendant CTS is a party to the CMA CGM and/or the CTS Bills of Lading. The legal duty of Defendant CTS to CMA CGM also arose independently of the aforesaid bills of lading because of many factors, including, without limitation, the foreseeability of harm to CMA CGM from their acts and omissions, the degree of certainty that CMA CGM suffered injuries, the closeness of the connection between Defendant CTS' conduct and the injury suffered, the moral blame of Defendant CTS' conduct, and the availability, cost and prevalence of insurance to cover risks involved.

38. Defendant CTS breached said duty of care by, inter alia, failing to provide required shipping instructions and/or customs documentations and/or accept delivery of the Idle Containers in Hong Kong or otherwise arranging for its delivery, for negligently misrepresenting and/or misdeclaring the particulars of the Cargo in the Idle Containers, including the nature of the shipments, and/or for shipping banned cargo to the PRC.

39. As a proximate result of the negligence of Defendant CTS, CMA CGM has incurred, and Defendant CTS is liable to CMA CGM for, additional freight, storage, demurrage, detention, liabilities, charges, penalties, costs, expenses and fees in an amount exceeding US$1,869,191.14 plus any additional damages and costs as they continue to accrue.

## FOURTH CAUSE OF ACTION

(For Work and Labor Performed/Quantum Meruit)

40. CMA CGM refers to and incorporates by reference as though set forth herein at length its allegations in paragraphs 1 through 39 above.

41. In or about November 2015 and January 2016, Defendant CTS became indebted to CMA CGM for the work and labor performed by CMA

CGM at the request and for the benefit of Defendant CTS, for which Defendant CTS agreed to pay CMA CGM.

42. Despite due demand, Defendant CTS owes CMA CGM an amount exceeding US$1,869,191.14 for said work and labor performed and/or CMA CGM is entitled to recover the value of said work and labor pursuant to the doctrine of quantum meruit.

## FIFTH CAUSE OF ACTION

(For Intentional Misrepresentation)

43. CMA CGM refers to and incorporates by reference as though set forth in paragraphs 1 through 42 above.

44. Defendant CTS falsely described to CMA CGM the Cargo in the Idle Containers and/or submitted documents to CMA CGM falsely describing the Cargo in the Idle Containers.

45. Defendant CTS knew that the Cargo in the Idle Containers was not "copper ingots" or "zinc oxide." It knew that the representation to CMA CGM that it was shipping "copper ingots" or "zinc oxide" was false when made and false when CMA CGM subsequently asked Defendant CTS for the required shipping instructions and/or customs documentation and/or to take possession of the Idle Containers.

46. Defendant CTS knew that CMA CGM would reasonably rely on Defendant CTS' intentional misrepresentations, and CMA CGM did reasonably rely on Defendant CTS' representations when accepting the Idle Containers for shipment, to its detriment.

47. CMA CGM's damages as a result of Defendant CTS' actions include but are not limited to additional storage, demurrage, detention, transshipment and destruction costs, liabilities, charges, penalties, other costs, expenses and fees in an amount exceeding US$1,869,191.14 plus any additional damages and costs as they continue to accrue.

## SIXTH CAUSE OF ACTION

(For Negligent Misrepresentation)

48. CMA CGM refers to and incorporates by reference as though set forth in paragraphs 1 through 47 above.

49. Defendant CTS falsely described to CMA CGM the Cargo in the Idle Containers and/or submitted documents to CMA CGM falsely describing the Cargo in the Idle Containers.

50. Defendant CTS had no reasonable grounds to believe that the Cargo in the Idle Containers was "copper ingots" or "zinc oxide" and intended for CMA CGM to rely on the representation that these shipments consisted of copper ingots or zinc oxide.

51. Defendant CTS's misrepresentations to CMA CGM were negligent.

52. CMA CGM's damages as a result of Defendant CTS' actions include but are not limited to additional freight, storage, demurrage, detention, transshipment and destruction costs, liabilities, charges, penalties, other costs, expenses and fees in an amount exceeding US$1,869,191.14 plus any additional damages and costs as they continue to accrue.

## SEVENTH CAUSE OF ACTION

(For Declaratory Relief)

53. CMA CGM refers to and incorporates by reference as though set forth herein at length its allegations contained in paragraphs 1 through 52 above.

54. There is an actual controversy between CMA CGM and Defendant CTS regarding the legal rights and duties of the parties with respect to the Cargo in the Idle Containers. CMA CGM contends that the Defendant is responsible and liable to CMA CGM for any and all additional freight, storage, demurrage, detention, transshipment and destruction costs, liabilities, charges, penalties, other costs, expenses and fees arising from the carriage of the Cargo in the Idle

-17-

Containers, Defendant CTS' failure to provide required shipping instructions and/or customs documentation and/or accept delivery of the Cargo in the Idle Containers, Defendant CTS' misdescription and misdeclaration of the particulars of the Cargo in the Idle Containers, and/or arising from Defendant CTS shipping loose mud and dirt to the PRC.  CMA CGM is informed and believes and thereupon alleges that the Defendant CTS denies it is responsible and liable to CMA CGM for the aforesaid damages and dispute in some manner the contentions of CMA CGM.

55.	CMA CGM seeks a declaration of the rights and liabilities of CMA CGM and Defendant CTS pursuant to 28 U.S.C. Section 2201.

## PRAYER

WHEREFORE, Plaintiff CMA CGM prays for judgment against Defendant CTS as follows:

1.	That the Court order judgment in favor of CMA CGM and against the Defendant CTS in an amount not less than US$1,869,191.14, for any and all additional freight, storage, demurrage, detention, transshipment and destruction costs, liabilities, charges, penalties, other costs, expenses and fees caused by Defendant CTS's breach or breaches of the CMA CGM Bills of Lading and/or applicable tariffs, negligence, for all amounts due under CMA CGM's tariffs, and for CMA CGM's work and services performed or quantum meruit as well any additional damages and costs that continue to accrue at an amount to be established at trial;

2.	That the Court declare the rights and liabilities of the parties;

3.	That the Court award CMA CGM its attorneys' fees, costs and expenses incurred as a result of Defendant CTS's breach or breaches and/or in collecting the sums due from Defendant CTS;

4.	That the Court award CMA CGM interest on all of the above as well as its costs of suit; and

5. That the Court award such other and further relief as the Court deems just and proper.

Dated:  October 4, 2019					GORDON REES SCULLY MANSUKHANI, LLP

By:  /s/ *James A. Marissen*
     JAMES A. MARISSEN
     RACHEL A. WEITZMAN
     Attorneys for Plaintiff
     CMA CGM S.A.

**Gordon Rees Scully Mansukhani, LLP**
**2211 Michelson Drive, Suite 400**
**Irvine, CA 92612**

1151275/47823030v.1